[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: TEMPORARY RESTRAINING ORDER
The principal matter before this court is the request for a temporary injunction to enjoin the defendants from reopening Millstone Unit II during the period of April 1, 1999 to June 15, 1999, the period when the largest portion, about 95%, of larvae entrainment occurs.
The defendants have given notice of their intention to reopen Unit II on or about April 29, 1999, and the plaintiffs have requested a temporary restraining order.
A temporary injunction is a preliminary judicial order, granted at the outset or during the pendency of action, forbidding performance of threatened acts alleged in a complaint until rights of parties respecting them have been finally determined by court. Deming v. Broadstreet, 85 Conn. 650, 659
(1912).
The primary purpose of a temporary injunction is to preserve CT Page 4134 the status quo until final determination of parties' rights after a hearing on the merits. Olcatt v. Pendelton. 128 Conn. 292, 295
(1941).
Inherent in the power of the court to issue a temporary injunction is the power to issue a temporary restraining order. The same criteria used for the granting of a temporary injunction are to be employed in an application for a temporary restraining order. They are:
1. Probable success on the merits of the claim.
 2. Balancing of the results which may be caused to one party or the other from the granting of such temporary relief.
3. Irreparable injury.
4 Lack of an adequate remedy at law.
The function of a temporary injunction is to determine whether or not the status quo should be maintained. It is the same for a temporary restraining order.
Since the issue before the court at present is the determination of whether or not a temporary injunction should be granted, it would be a travesty on the judicial system of the defendants in this case or any case were allowed to determine on their own initiative the very issue before the court before the plaintiffs have even finished their case.
There are many cases where defendants are currently engaged in an activity which is allowed to continue while a court sorts out the allegations and the facts in order to determine whether or not a temporary injunction should be granted. In a case such as this, however, where the status quo is nonaction and the issue is whether to permit new action or renewing a former action it would be improper for a party to commence action or renew an action on its own volition.
In many cases under similar circumstances the request for a temporary injunction would contain a request for a temporary restraining order if the plaintiffs had knowledge of contemplated action while the case is before the court.
Since no request to prevent reopening during litigation was CT Page 4135 made at the outset, a request for a temporary restraining order is appropriate in the light of defendants contemplated action and especially since the plaintiffs have not completed their case.
Contrary to the assertions of the defendants the court is of the opinion that at this stage of the proceedings, albeit the plaintiffs' case is incomplete, they have made out a prima facie case. Thus it is incumbent on the court to issue a temporary restraining order while the case continues. Although the affidavits supplied by the defendants present a strong front, the court will have to hear the witnesses under both direct and cross examination before a determination can be made as to whether or not a temporary injunction can issue.
Accordingly the plaintiffs' request for a temporary restraining order is granted and the defendants are restrained from reopening for the commercial generation of electricity Millstone II and/or taking it to criticality until further order of this court at the conclusion of the hearing on the request for a temporary injunction.
Hale, Judge Trial Referee